SUPREME COURT OF ARIZONA
En Banc

| | |
|---|---|
| TOM RAWLES and LINDA RAWLES individuals and electors, | ) ) ) | Arizona Supreme Court No. CV-04-0005-AP/EL |
| Petitioners, | ) ) ) | |
| v. | ) ) ) | Maricopa County Superior Court No. CV2003-024219 |
| DENNIS KAVANAUGH, real party in interest; BARBARA JONES, the duly appointed City Clerk who is named solely in her official capacity; R. FULTON BROCK, DON STAPLEY, ANDREW M. KUNASEK, MARY ROSE WILCOX, and MAX WILSON, as duly elected and appointed members of the Maricopa County Board of Supervisors who are named solely in their official capacity; HELEN PURCELL, the duly elected Maricopa County Recorder who is named solely in her official capacity; and KAREN OSBORNE, the duly appointed Maricopa County Director of Elections who is named solely in her official capacity, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **MEMORANDUM DECISION** (Not for Publication, Ariz. R. Sup. Ct. 111) |
| Respondents. | ) ) | |

Appeal from the Superior Court in Maricopa County
The Honorable Paul A. Katz, Judge

**AFFIRMED**

MUELLER & DRURY, P.C.                                                   Scottsdale
     by   Douglas V. Drury
Attorney for Petitioners Rawles

GAMMAGE & BURNHAM, P.L.C.                                          Phoenix
     by   Lisa T. Hauser
     and  Leonard W. Aragon
Attorneys for Respondent Kavanaugh

CITY OF MESA ATTORNEY'S OFFICE                                    Mesa
     by   Deborah J. Spinner, City Attorney
Attorney for Respondent Barbara Jones

RICHARD M. ROMLEY, MARICOPA COUNTY ATTORNEY           Phoenix
     by   Bruce P. White, Deputy County Attorney
     and  Jill M. Kennedy, Deputy County Attorney
Attorneys for Respondents Brock, Stapley,
     Kunasek, Wilcox, Wilson, Purcell, and Osborne

**B E R C H**, Justice

¶1         Respondent-Appellant Dennis Kavanaugh seeks review of the superior court's judgment that the term-limits provision in the Mesa City Charter prohibits him from seeking an additional term as a City Councilmember.   Kavanaugh asserts that the superior court erred in applying the two-term limitation to prevent him from seeking a third term because his two terms as a Councilmember were served in different positions.   Kavanaugh also argues that the claims of Petitioners Tom and Linda Rawles should be barred by laches.   Because of time constraints in this accelerated election appeal, we previously issued an order vacating an existing stay order and affirming the superior court's order enjoining the printing of electoral ballots containing Kavanaugh's name as a candidate for the Mesa City Council.   We stated that a written decision would follow explaining this court's ruling.   This is that decision.

### FACTS AND PROCEDURAL HISTORY

¶2         In 1996, Dennis Kavanaugh was elected in an "at-large" election to serve on the Mesa City Council for a four-year term.

Under the "at-large" system, all municipal electors were eligible to vote for all six City Councilmembers. Each prevailing candidate served a four-year term as Councilmember representing the entire city. In 1998, the Mesa City Charter was amended to divide the city into six geographic districts, each of which elected its own District Councilmember. Under the new system, an elector may vote only for candidates from the elector's home district. In the first election under the amended system in 2000, Kavanaugh was elected the District 3 Councilmember.

¶3 The Mesa City Charter has contained a term-limits provision for City Councilmembers since 1967. That provision prohibits any person from serving as a "Councilmember for more than two (2) consecutive four- (4-) year terms." Kavanaugh's term as the District's Councilmember expires this year. After receiving advice from the Mesa City Attorney that the term-limits provision did not prevent him from serving an additional term, Kavanaugh completed the required petitions and submitted them on December 8, 2003.

¶4 On December 22, 2003, Tom Rawles, the only other candidate for District 3 Councilmember, and his wife, Linda, filed a petition in superior court pursuant to Arizona Revised Statutes ("A.R.S.") section 16-351(B) (Supp. 2003) challenging Kavanaugh's candidacy. The petition alleged that Kavanaugh had

already served two terms as a Councilmember and was thus ineligible to seek a third term. In response, Kavanaugh claimed that because the Rawleses delayed in seeking relief, their action was barred by the doctrine of laches. Kavanaugh also asserted that Mesa's term-limits provision did not prohibit him from serving an additional term because he had only served one term as a "District Councilmember," the other term having been served as a "Councilmember at-large."

¶5    The superior court found that both "at-large Councilmembers" and "District Councilmembers" served as "Councilmembers" as that term was used in the term-limits provision. The court also found that both parties acted in good faith and there was no undue delay, and therefore rejected Kavanaugh's laches defense. The court entered judgment enjoining the City from listing Kavanaugh as a candidate on the ballots for the upcoming City Council election. Kavanaugh filed a timely appeal.

## DISCUSSION

### A.    Standard of Review

¶6    In an appeal from a declaratory judgment action brought in the superior court, the reviewing court must defer to the trial court's findings of fact, but is not bound by the trial court's conclusions of law. *Motel 6 Operating Ltd. P'ship v. City of Flagstaff*, 195 Ariz. 569, 570-71, ¶ 7, 991 P.2d 272,

- 4 -

273-74 (App. 1999). The parties agreed that there were no issues of fact in dispute. Accordingly, we move directly to the trial court's legal determinations, which we review *de novo*. *Id*. at 571, 991 P.2d at 274.

**B.   Merits**[1]

*1.   Term-Limits Provision*

¶7        Kavanaugh appeals the superior court's judgment that the Mesa City Charter's term-limits provision precludes his bid for reelection as District 3 Councilmember. He asserts that the provision does not apply to this case because he has only served a single term as a "District Councilmember." We disagree with his analysis.

¶8        Section 201(E) of the Mesa City Charter provides that "[n]o person shall be eligible to be elected to the office of Councilmember for more than two (2) consecutive four- (4-) year terms." Because we indulge "a presumption in favor of the eligibility" of candidates, *see McCarthy v. State ex rel. Harless*, 55 Ariz. 328, 335, 101 P.2d 449, 451 (1940), we view

---

[1]        In the original action before Judge Paul A. Katz, Kavanaugh contested the court's jurisdiction to hear the dispute, alleging that the Mesa City Charter provided its City Council with original jurisdiction over candidate-qualification disputes. Judge Katz rejected Kavanaugh's argument, holding that the superior court was an appropriate venue and had jurisdiction under A.R.S. § 16-351. Kavanaugh expressly declined to appeal Judge Katz's ruling on this issue. Consequently, we do not consider the issue of jurisdiction in this decision.

narrowly such limits on a candidate's ability to serve. *Id.* at 334-35, 101 P.2d at 451 (noting that we should read restrictions so as not to "impair[] the right of the people to select officers of their own choosing").

¶9    Nonetheless, we interpret statutes, rules and charter provisions according to their plain language, giving "full effect to the intent of the lawmaker." *Adams v. Bolin*, 74 Ariz. 269, 276, 247 P.2d 617, 621 (1952). The word "Councilmember" in the 1967 term-limits provision does not distinguish between district and at-large members. It appears to refer to all individuals who serve as members of the City Council.

¶10    Kavanaugh contends, however, that the language change in the City Charter following the 1998 amendments renders "at-large Councilmember" and "DISTRICT Councilmember" two distinct positions. Kavanaugh notes that the 1998 amendments changed the language of Section 201(A) from "[t]here shall be a City Council consisting of a Mayor and six (6) other Councilmembers" to its current version: "There shall be a City Council consisting of a Mayor and six (6) other DISTRICT Councilmembers." (Emphasis in original.) Thus, Kavanaugh asserts that "the two-term-limitation only applies prospectively to the newly created District Councilmembers."

¶11    Kavanaugh's argument is undercut not only by the plain language of the term-limits provision, but also by the practical

effect that such a rigid construction would have on the term-limits rule. If adopted, the argument that the position of "District Councilmember" is distinct from that of an "at-large Councilmember" would eviscerate the term-limits rule. By that reasoning, if council boundaries shifted, a Councilmember would hold a new district position, one not subject to the term-limits rule. Nor under this reasoning would Kavanaugh be barred from serving a third or fourth term as a Councilmember if he moved from District 3 to another district. Indeed, because the City has recently changed to district representation, Kavanaugh's interpretation would mean that the term-limits provision applies to no one for this election cycle. Moreover, if the position of "District Councilmember" is separate and distinct from the position of "Councilmember," the former would appear not to be bound at all by Section 201(E)'s limitation on the terms of "Councilmembers." This could not have been the intent of the drafters. The plain language of Section 201(E), that "[n]o person shall be eligible to be elected to the office of Councilmember for more than two (2) consecutive four- (4-) year terms," must be construed to mean what it says.

¶12 Additionally, we note that despite the fact that Kavanaugh originally served as an "at-large Councilmember" before becoming a "District Councilmember," he does the same job and represents many of the same constituents he represented

before.    This is not a "new" or "distinct" public office. Rather, it appears that the 1998 amendments merely added the term "District" to the position title to highlight that future Councilmembers would be elected from districts rather than serving at-large.

¶13      We therefore conclude that Section 201(E) of the Mesa City Charter should be read to limit the ability of *all* Councilmembers to exceed the term-limits rule.    This view is consistent both with a reading of the Charter as a whole and with an existing Attorney General Opinion that redistricting should not be permitted to circumvent term limits.    *See* Op. Ariz. Att'y Gen. I01-019 (noting that term limits reduce the advantages of incumbency, a purpose that is hindered if a redistricting process allows an incumbent to run for an additional term).[2]

        *2.    Laches*

¶14      Kavanaugh asserts that the Rawleses' claim should be barred by the doctrine of laches because they failed to challenge Kavanaugh's candidacy in a timely manner.      We

---

[2]      Kavanaugh attempts to distinguish his case by noting that his situation is not one of redistricting, but rather "districting" for the first time.    This distinction is not compelling, as the overriding issue remains whether a candidate can exceed a term-limits rule simply by changing constituencies or having his constituency changed.    In both situations – redistricting and districting – the candidate is alleging that his term limits are not implicated since he now represents a different constituency.

- 8 -

disagree.

¶15    The defense of laches is available in election disputes.  *See, e.g., Mathieu v. Mahoney*, 174 Ariz. 456, 459, 851 P.2d 81, 84 (1993) (noting that the "concern with timeliness stems in part from the notion that 'disputes concerning election and petition matters must be initiated and heard in time to prepare the ballots for absentee voting to avoid rendering an action moot'") (quoting *Kromko v. Superior Court*, 168 Ariz. 51, 57, 811 P.2d 12, 18 (1991)).  The current case raises concerns similar to those in *Mathieu* because it, too, was brought on the eve of ballot preparation.

¶16    However, the facts of *Mathieu* differ with respect to both the extent of and the purpose for the delay in bringing the action.  In *Mathieu*, the petitioners did not file an action until more than a year after learning of a group's intent to have an initiative placed on the ballot.  *Id*. at 459, 851 P.2d at 84.  The evidence in the current case is that the Rawleses filed their action within ten days after Kavanaugh qualified for the ballot, as required by A.R.S. § 16-351.

¶17    Kavanaugh argues that the Rawleses should have brought this action long before December 22, 2003, the date this case was filed.  He points to evidence that Tom Rawles knew no later than October 22, 2003, of Kavanaugh's interest in seeking an additional term.  We note, however, that Kavanaugh did not

become an official candidate until he submitted his petitions on December 8, 2003, the last day for submitting candidacy petitions. Thus any claim before December 8, 2003 would arguably not have been ripe. *See Winkle v. City of Tucson*, 190 Ariz. 413, 415, 949 P.2d 502, 504 (1997) ("The ripeness doctrine prevents a court from rendering a premature judgment or opinion on a situation that may never occur."). Only two weeks passed between the time that the Rawleses' action ripened and the time they filed this action. Consequently, we agree with the trial court's determination that both parties acted in good faith and affirm the court's conclusion that the doctrine of laches does not apply.

## CONCLUSION

¶18 We affirm the decision of the superior court that the name of Councilmember Kavanaugh shall not appear on the 2004 District 3 ballot for the City of Mesa, Arizona.

_____
Rebecca White Berch, Justice


CONCURRING:


_____
Charles E. Jones, Chief Justice


_____
Ruth V. McGregor, Vice Chief Justice

_____
Michael D. Ryan, Justice


_____
Andrew D. Hurwitz, Justice